**NUTT et al. v. ANDERSON et al.**

No. 13217.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 27, 1935.

Rehearing Denied Oct. 25, 1935.

Milburn E. Nutt, of Wichita Falls, for appellants.

Wayne Somerville, of Wichita Falls, for all appellees except Empire Mortg. Co. and C. S. Schmoker.

Kay & Akin, of Wichita Falls, for appellees Empire Mortg. Co. and C. S. Schmoker.

MARTIN, Justice.

Mrs. L. T. Anderson was the owner in fee of the land in controvesy in this case, acquiring it by purchase in the year 1922, upon the dissolution of a corporation formerly owning the same. During her lifetime she created mortgages on several tracts, including this one, in favor of the City National Bank and the Empire Mortgage Company, and on January 9, 1923, executed a deed of trust to W. L. Robertson, trustee, in favor of the Empire Mortgage Company to secure the payment of a note of $8,000 secured by five tracts of land, including this one, and such deed of trust was duly récorded in the deed records of Wichita county. She also executed a renewal of such indebtedness and its security on December 22, 1927, which was also duly recorded. In the meantime, the Empire Mortgage Company had sold the note or mortgage bond to appellee C. S. Schmoker, soon after it was made, but no transfer of the lien was ever executed and placed of record; the mortgage company remaining the record owner of the security up to the time of trial. This was shown to be the custom of the company, when notes were thus sold, and also to contract for renewals of such instruments when transfers were not made, acting as a trustee for the owner of the note.

Mrs. Anderson in the year 1931 died, and on November 16, 1931, the appellees David N. Anderson, Ray N. Anderson, and J. B. Marlow were appointed joint administrators of her estate. Mrs. Anderson having married a man named Killion, the probate proceedings were conducted under the name of "Estate of Leona F. Anderson Killion."

The administrators duly advertised in February and March, 1932, within the time required by law, for all persons having claims against the estate to present them for allowance; but they did not notify the Empire Mortgage Company, by registered letter, as required by law, although the administrators had full knowledge of the existence of this lien against the estate. On the other hand, the executive officers

of the Empire Mortgage Company had actual notice of the death of Mrs. Killion and of the pending administration of her estate. It is disclosed by the record and practically admitted by the parties that the estate was insolvent.

On December 28, 1933, the administrators filed a petition for an order of sale of all real estate belonging to the estate, including the land in controversy. It was duly advertised, and on the 8th day of January, 1934, the county probate court granted the order of sale, and on the 6th day of February the several tracts belonging to the estate were sold; this particular tract being knocked down to the Empire Mortgage Company at a price of $1,455. The sale was reported and confirmed by the court, but the company declined to take the property, so it was, in conformity with law, resold on the 1st day of May, 1934; the appellant herein, J. Newton Nutt, becoming the purchaser for a consideration of $1,500, of which amount $300 was paid in cash and he executed his note for the balance of $1,200, payable within twelve months. This sale was duly approved on report to the court. The order approving this sale directs the administrators to make title to Mr. Nutt, "free and clear of all liens, claims, titles, equities and estates whatever except lawful taxes" against the same. The deed executed by the administrators contains the same language and is dated May 14, 1934.

On July 6, 1934, appellee C. S. Schmoker presented his claim to the attorney for the administrators of the estate in the sum of $10,376 principal and interest, and it was returned a few days later neither allowed nor rejected.

On June 6, 1934, appellant filed his petition in form of trespass to try title, making all record creditors, all unknown creditors, heirs at law, known and unknown, and all administrators and the estate itself parties defendant. The unknown heirs and all defendants cited by publication were represented by counsel, appointed by the court, and all defendants except the administrators, the intervener Schmoker, and the Empire Mortgage Company filed disclaimers. Schmoker was permitted to intervene and set up his note and the deed of trust, still held by the mortgage company. By his answer he pleaded general denial and not guilty, and then sets forth his intervention, pleading the debt and the deed of trust and for foreclosure. The mortgage company pleaded general denial and not guilty. The administrators individually disclaimed, but as administrators pleaded that Schmoker was not the record holder of any lien within four months after their appointment; that the Empire Mortgage Company had duly filed a claim, which was allowed, but did not bring forward the Schmoker claim; that they sold the property under orders of the court and applied the proceeds to the expenses of administration; that intervener's claim was not properly presented and his suit is therefore premature.

The case was tried to the court on September 11, 1934, resulting in judgment for the appellant for the legal title and possession of the land and for the appellee Schmoker for the amount of his debt, and establishing his lien upon the property and for foreclosure of the same. Appellants Nutt and the administrators excepted to the judgment and bring the case to this court for review by appeal.

As stated by counsel for appellant in the opening paragraph of his brief, "this appeal is to determine the rights of a purchaser at a duly ordered and advertised administrator's sale."

■ Generally speaking, there is no doubt that the rule of caveat emptor applies to sales by administrators. 14 Tex. Jur. § 490, and authorities there collated and cited. See, also R. C. L. vol. 11, p. 388. It is also well settled that the purchaser at such sale takes the title of the deceased as it stands and is entitled to all the rights and subject to all the encumbrances the deceased would have if living. The administrator does not warrant the title of the property sold. These are general rules. The question at issue here is: "Are they applicable to the facts in this case?" Or, in other words: "Do the facts and the probate laws of Texas take this case out of the operation of general rules?"

Appellants take the position that the administrators, under the circumstances, had the right to ignore the claim of Schmoker, because no transfer of the lien of the Empire Mortgage Company appeared of record and because the company had apparently abandoned its own claim for another debt which had been allowed by the administrators, and because the estate was insolvent and the proceeds of the sale were applied to the expense of administration and their defenses were adopted by appellant Nutt.

There is no conflict in the testimony. It shows conclusively that "shortly after" the execution of the lien Schmoker bought the note or bond; that some time later he loaned it to a friend to use in the promotion of some company; and it was subsequently returned to him and was his property at the time of the sale, though at all times the security stood of record in the name of the company. The administrators at all times, theretofore, had recognized it as the property of the mortgage company. It was listed in the original list of claims and was also listed by them in the application to sell—but listed as a claim of the company.

■ We think the rule is well settled that so long as a debt exists, the "security will follow the debt," and that the assignment of the debt carries with it the ownership of the lien. Tex. Jur. vol. 28, p. 20, and cases cited.

■ It is true that Schmoker's claim was not presented within the time required by law to obtain full recognition. No registered notice was given by the administrators, though the record owner of the security knew of the pendency of administration. So he was, under the provisions of article 3515a, Vernon's Ann. Civ. St. (Acts 42nd Leg. c. 52), relegated to his security alone for the payment of his debt and his belated claim was so presented as shown by the record. We think he did not lose his security by reason of his apparent laches. The unreleased record of the mortgage and its renewal was notice to the world of its existence.

■ But appellants contend that the sale was made "free of all liens and encumbrances" excepting taxes, and was so approved and the deed was executed under the orders of the court so providing, and therefore this recitation, being the solemn judgment of a court of competent jurisdiction, should control. The suggestion of appellee that it should be treated as "mere surplusage" is denominated (as is the judgment of the trial court) as a collateral attack upon the judgment of the probate court. We are cited to no authority holding that a county probate court has the right, even by a formal order, to set aside and hold for naught duly executed and recorded liens upon real estate, and we do not think the court had such a right, nor do we believe this recitation in these instruments constitutes such a judgment of that court as to give appellant the right to invoke the doctrine of collateral attack. We do not construe the orders of the county probate court to be so far-reaching. While it is true that such court has the power in certain instances to devote the proceeds of the sale of mortgaged assets to the costs of administration, we think that is a matter of distribution of the estate rather than the right to cancel the security of a secured creditor. In fact, we can conceive of no circumstances under which the probate court would have the right or authority to effectively cancel a mortgage and outlaw a debt of the decedent, without the knowledge or consent of the creditor lienholder, whether the estate be solvent or insolvent. It may be that under certain circumstances such a lienholder might be required to advance the costs of administration before he could secure the benefits of his lien. In equity he might be required to pay claims of the first and second class out of the assets upon which his security rests, but there is neither pleading nor proof in this case to support such a result. On the contrary, the appellant bases his title specifically upon the recitation in the confirmation of sale and the administrators' deed that the land was sold "free from all liens, etc.," and the insolvency of the estate. The record shows that several other tracts of land were sold under the same order of sale. They and all other assets of the estate were chargeable with the expense of administration, the rule being that unencumbered assets be first applied. Were these things done? The record does not show, but if these matters were ever worked out and these equities ever adjusted, it was done in the absence of Schmoker, the owner and holder of a secured claim against the estate. Rodgers v. Sturgis Nat'l Bank (Tex.Civ.App.) 152 S. W. 1176. If the unencumbered assets of the estate were insufficient to meet the expense of administration, equity would require an equal or pro rata contribution from all secured creditors to meet the deficiency, rather than the arbitrary cancellation of any individual claim. We do not regard the recitation in the judgment approving the sale and in the deed that the property was sold "free" from liens as a real judgment of the court, but if it was, then it was, in our opinion, void for want of any authority in law to make such an offer.

We have not taken up and discussed the various assignments of error filed by the

appellant in regular order, nor the propositions made by the appellee; but we have carefully considered the same and the authorities cited, and, believing we have covered the real issues presented, we order that the judgment of the trial court be affirmed.