**ANDERSON et al. v. SCHMOKER.**

No. 13654.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 28, 1938.

Rehearing Denied March 4, 1938.

Milburn E. Nutt and Wayne Somerville, both of Wichita Falls, for appellants.

Kay & Akin, of Wichita Falls, for appellee.

SPEER, Justice.

This case had its origin in the probate proceedings of the county court of Wichita county, where Ray N. Anderson, David W. Anderson, and J. B. Barlow are administrators of the estate of Leona F. Anderson Killion, deceased.

It appears from the record that this was an estate consisting of nearly a hundred thousand dollars in assets, and more in liabilities; that the estate was at all times insolvent; that over a period of time since 1931, when the administrators were appointed, until in 1934, the court ordered, and by its orders of approval permitted, the administrators to assemble the properties, sell and dispose of them, pay debts under classifications made by law, and to generally administer the estate. There were several pieces of real estate incumbered by liens which the administrators transferred to lien creditors in satisfaction of their respective claims; other unincumbered lands were sold for cash and the proceeds used in the administration.

C. S. Schmoker held an indebtedness against the estate of approximately $10,000, secured by a first lien on about 116 acres of land in Wichita county, Tex.; it being the land involved in this suit. Schmoker made proof of and presented his claim against the estate, showing the security held by him, in July, 1934; by the proof of claim made, he elected to rely upon the provisions of subsection (b) of section 1, of article 3515a, Vernon's Ann.Civ.St., as a preferred debt and lien against the specific property shown to secure the indebtedness.

■ The claim against the estate thus made was presented to the administrators, but they neither allowed or rejected it.

This was equivalent to its rejection, and it became the duty of claimant to preserve his rights by instituting suit thereon.

■ One phase of this case has been before this court, as shown in Nutt et al. v. Anderson et al., 87 S.W.2d 760, 761. We may properly take cognizance of that proceeding, in so far as it affects the case under consideration. The issues involved in the cited case, the judgment there rendered, and the disposition made of it by this court and by the Supreme Court, were pleaded and proven upon the trial of the instant case.

In the cause formerly before this court, it appears that the administrators, under order of the probate court, had sold at public sale the land now in controversy to J. Newton Nutt, and the order of that court confirmed the sale and ordered the administrators to make conveyance of title to the purchaser, "free and clear of all liens, claims, titles, equities and estates whatever except lawful taxes" against the same.

On June 6, 1934, Mr. Nutt, the purchaser at administrator's sale, filed a suit in trespass to try title against the estate, the administrators, all record creditors, and all unknown creditors of the estate, as parties defendant. C. S. Schmoker was permitted to intervene and set up his claim in the form of a note and the deed of trust securing it, and prayed in cross-action against Nutt, and all other parties who had not disclaimed, for the establishment of his debt and superior lien on the land. A judgment was rendered in that case decreeing to Nutt the legal title and possession of the land, against all parties defendant, except C. S. Schmoker, as defendant and intervener. By the same judgment it was decreed that Schmoker's claim for debt and superior lien on the land were established, and judgment was rendered in his favor for the amount of the debt and a foreclosure of the lien on the land; it being the same land now in controversy. An appeal from that judgment to this court was perfected by Nutt and the administrators. By the opinion above cited, this court, speaking through the late Justice Martin, affirmed the judgment of the trial court; an application for writ of error was denied by the Supreme Court. That judgment, which established Schmoker's debt and lien as being superior to any and all claims of Nutt and the administrators, became final and is binding on the administrators; the effect of that

judgment was not altered by a subsequent conveyance by Nutt to the administrators, which conveyance we shall have occasion to mention later in this opinion.

The instant case was instituted by Schmoker on April 3, 1936, when he filed an application in the probate court of Wichita county, Tex., for an order requiring the administrators to sell the land for the purpose of procuring funds with which to satisfy his debt of $10,376, with interest thereon at 10 per cent. per annum since September 11, 1934, and in satisfaction of his first and superior lien on the land, consisting of one tract of 112 acres and another tract of 4.62 acres, fully described in the application, and we deem it unnecessary to repeat the description here. It was shown in the application that the debt and lien were the same as that established by the district court from which judgment an appeal was taken to this court and affirmed by the opinion above cited. Allegations were made of the presentation of the claim and lien to the administrators; that it was rejected by them when they failed to act thereon; that by the intervention in the former suit by cross-action against the administrators he had preserved his debt and lien; he pleaded somewhat in detail the nature of the former suit, the finality and binding effect on the administrators; and that there were no other funds in the hands of the administrators with which to satisfy his claim. Prayer was for an order requiring the sale of the lands and the application of the proceeds to his debt and lien, but that no deficiency judgment be allowed.

The administrators answered by general denial and by several special pleas and defenses. They alleged the estate was the owner of the lands described in plaintiff's application; in this respect it is claimed that theretofore, under an order of the probate court, they had been authorized to sell the lands to J. Newton Nutt, and that they did, on the first Tuesday in May, 1934, make such a sale to Nutt, free and clear of all claims and liens, except lawful taxes against it; that, being unable to secure a release from C. S. Schmoker of his claims against the land, the probate court, by order entered to that effect, permitted them to receive from said Nutt a reconveyance of the land in consideration of a return by them to Nutt of the consideration paid to them by him under said previous sale, and that they now hold the land under said deed of reconveyance from Nutt.

The further allegation was made by the administrators that in October, 1936, they had made their annual report of the condition of the estate, by which it was shown the estate was insolvent, and that there remained unpaid certain debts classified by article 3531, Rev.Civ.Statutes, as amended by Acts 1931, c. 234, § 1, Vernon's Ann. Civ.St. art. 3531, as preferred claims over that asserted by Schmoker, the amount of which said preferred and superior claims were over $4,000. That by said report it was shown the land in controversy was the only property in the hands of the administrators out of which funds could be obtained with which to pay said preferred debts; allegations were made that the report so filed had been duly approved by the probate court, and that the claim of Schmoker was inferior to and subject to the payment of said preferred and superior claims.

Prayer in the cross-action was for an order authorizing the administrators to sell the lands in controversy, and to use the proceeds arising therefrom, first, to the payment of all approved and duly allowed claims of classes 1 and 2, under said article 3531, R.C.S., as amended, and second, the excess, if any, to be paid to Schmoker on his claim which was in group or class 3 under said statute.

The probate court entered the order prayed for by Schmoker, and against the administrators on their cross-action, and the administrators appealed to the district court of Wichita county, where, upon a hearing, a similar judgment was entered. This judgment was certified to the probate court for observance. The appeal was perfected to this court from the district court judgment.

The contention of the administrators, to whom we shall refer as appellants, as disclosed by their brief, is based upon alleged errors committed by the trial court, in refusing to take cognizance of their cross-action; this naturally challenged the correctness of the court's action in finding in favor of Schmoker, to whom we shall hereinafter refer as appellee.

There is no dispute between the parties about the testimony offered upon the trial. It may be said that each side fully supported his contention, by testimony, of the fact issues plead. The appellants earnestly insist that since the estate was insolvent,

and there remained a large indebtedness consisting of expenses of administration, including attorney's fees for services rendered, and compensation to them previously allowed by the court, that these amounts were superior to the claims of appellee, and entitled to be paid out of the proceeds of the sale of the land.

The record discloses that there was originally perhaps 1,000 acres of land, in several tracts, owned by the estate. That a large portion of the land was incumbered with debts and liens, and that in such cases as the incumbrances were greater than the value of the land, appellants had conveyed the land to the creditor in settlement of the debt; that there were other tracts consisting of small acreage and town lots which were unincumbered, that had been sold for cash and the proceeds used in administering the estate; that the land in controversy was all that was left at the time of this suit, and there was no personal property on hand out of which funds could be procured with which to pay the classes 1 and 2 claims. Under these conditions it was sought by appellants to hold the lands, upon which appellee had his lien, liable for the whole of the remaining unpaid administrative expense.

Appellee proved the controversy involved in the other suit, between him, the appellants here, and other creditors of the estate on the one side, and J. Newton Nutt on the other, as above referred to in this opinion. The judgment of the trial court and the mandate of this court were in evidence. It was there disclosed that a final judgment had been entered, adjudicating the legal title of this land to be in J. Newton Nutt, subject to the debt and lien held by appellee. See Nutt et al. v. Anderson et al., supra.

The testimony shows that the mandate of this court, in the above-cited case, was received and filed in Wichita county on February 14, 1936, and on May 14, 1936, J. Newton Nutt reconveyed the land to the administrators under an order of the probate court permitting the administrators to receive it upon return to Nutt of the consideration paid by him. This conveyance it will be observed was subsequent to the application by appellee for the order of sale.

■ We have seen, from what has been said, that by a final judgment the legal title to the land had been adjudicated to be in Nutt, subject to the debt and lien of appellee. The reconveyance by Nutt to appellants thereafter could pass no greater title or interest than that held by Nutt, and the conveyance carried with it the same incumbrance that was on it while in Nutt's hands. The appellee's rights as against the land were not impaired by the reconveyance to appellants. Hence, there was no error in the judgment of the court in decreeing that the lands be sold to satisfy appellee's debt.

■ We do not gainsay the wisdom and equity evidenced by the order of the probate court in permitting appellants to receive from Nutt a reconveyance of the land and to return the consideration, when it was determined that Nutt had not received title free from all liens, claims, and equities of other persons as was contained in the court order and the deed thereunder; yet, as between the parties to this suit, appellee's rights were settled in this respect by the judgment and its affirmance by this court. It cannot be relitigated here; lawsuits must have an end some time. It becomes unnecessary for us to discuss further the priorities of claims as contended for by appellants in their cross-action; these matters were settled in the other case; we are not ready to say the opinion in the former case was incorrect; a writ of error was denied by the Supreme Court, and that ended it.

■ The facts in this case, to the effect that the estate had been insolvent at all times since the death of Mrs. Killion, are undisputed. The appellants were at all times fully aware of that fact; they received from sales of unincumbered property $3,500; they conveyed nearly $50,000 worth of lands to creditors in payment of their respective debts. It does not appear that any one of those to whom lands were sold in payment of debts were called upon to pay any part of the administrative expense. The record does not disclose that any one of those secured creditors had any better lien than the appellee had, and his was decreed to be a first and superior one on the lands in controversy. It would now be unfair and inequitable, and even in the face of the provisions of statutes, to require appellee to pay from his securities, the whole of the unpaid administrative expense.

Article 3532, Rev.Civ.St., provides that if there is a deficiency in the assets of an estate to pay claims of the same class,

they shall be paid pro rata; the same article prohibits administrators from paying claims, except upon a pro rata basis as therein defined. This was not done by appellants; instead it appears some claims were paid in full. The pro rata part of liability which could be allocated to appellee on account of his interest, would be very small, perhaps too small to warrant the court in disturbing a judgment which took no cognizance of it.

This point was decided against the contention of appellants in the Nutt v. Anderson Case, supra. The court there said: "If the unencumbered assets of the estate were insufficient to meet the expense of administration, equity would require an equal or pro rata contribution from all secured creditors to meet the deficiency, rather than the arbitrary cancellation of any individual claim."

We have not taken up and discussed the various assignments of error presented by appellants in support of the contentions hereinabove referred to, but we have carefully studied them all, and, for the reasons given, they must be overruled. Finding no error to justify the reversal of the trial court's judgment, it is, in all things, affirmed.