# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 26, 2013

Lyle W. Cayce
Clerk

No. 12-20559
Summary Calendar

ASHLEY MARTINS,

Plaintiff-Appellant,

versus

BAC HOME LOANS SERVICING, L.P.;
FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, PRADO, and OWEN, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

BAC Home Loans Servicing, L.P. ("BAC"), foreclosed on Ashley Martins's house, whereupon he challenged the foreclosure. Finding no genuine issue of material fact, the district court granted summary judgment for BAC. We affirm.

No. 12-20559

## I.

In 2003, Martins refinanced a mortgage on his homestead through BSM Financial ("BSM"), executing a security instrument naming the Mortgage Electronic Registration System ("MERS") as the beneficiary and nominee for BSM and its assigns. Martins paid the mortgage until December 2009, when he became delinquent and then ceased payment in June 2010.

In November 2010, MERS assigned the mortgage to BAC; the transfer was recorded on November 22. In February 2011, Martins was notified that he was in default and that the property would be foreclosed on if he failed to cure the default. Martins did not respond, and on March 14 the note's trustee provided notice to Martins and the clerk's office that the property would be sold. The house was sold on April 5, 2011, to the Federal National Mortgage Association ("Fannie Mae"); Martins did not participate in the sale.

Martins sued in state court claiming wrongful foreclosure, promissory estoppel, and negligent misrepresentations. BAC removed to federal court and moved for summary judgment. Following Martins's failure to file a response, BAC filed a Notice of No Response, to which Martins replied with a motion for continuance, which was denied, and an untimely reply to the summary judgment motion. Having considered the untimely reply, the court granted summary judgment for BAC.

## II.

"Summary judgments are reviewed *de novo*." *Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 787 (5th Cir. 2012). Summary judgment may be granted where, taking the evidence in the light most favorable to the non-movant, there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also* FED. R. CIV. P. 56(a).

No. 12-20559

III.

A.

Martins questions BAC's "standing" to foreclose. Martins presents an incoherent and rambling argument conflating ownership of a note with constitutional standing. Interpreting those arguments most charitably, we conclude that Martins contends that the note was not properly transferred to BAC and that the assignment was "robosigned" and therefore "forged." Because of that, Martins's logic goes, BAC was not the holder of the note, did not own the mortgage, and could not foreclose.

This argument fails. There is no doubt that the mortgage was transferred by MERS to BAC, which presented a signed, notarized assignment document that had also been recorded by the county clerk. Martins's allegations of forgery rest on the fact (based on counsel's research) that MERS does not have a Texas office and that the assignment was "robosigned." That alone is hardly sufficient to maintain a claim for fraud, much less to avoid summary judgment.[1] BAC has offered sufficient evidence, through its recorded assignment, that it was the rightful holder of the mortgage, and Martins failed to present evidence creating a genuine issue of fact.

B.

Martins contends that BAC cannot foreclose because it was assigned only the mortgage, and not the note itself, by MERS. Martins suggests that the assignment split the note from the deed of trust and that BAC therefore had a meaningless piece of paper rather than a debt on which it could foreclose.

---

[1] *See Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 470 (W.D. Tex. 2011) (dismissing suit for failure to state a claim where one of the arguments was that the mortgage documents were robosigned and therefore somehow invalid); *Christensen v. Bank of Am., N.A.*, 2011 WL 7070568 (N.D. Tex. Nov. 4, 2011) (granting summary judgment where the plaintiff had no grounds for alleging that a document was robosigned).

No. 12-20559

Martins's argument merges, in part, two common theories on which mort-gagees in wrongful-foreclosure cases in Texas and elsewhere often attempt to rely: what is commonly called the "show-me-the-note" theory and what may be called the "split-the-note" theory. There is some disagreement among the federal district courts,[2] and we have not spoken plainly enough on this issue in a pub-lished opinion, so we now clarify what is required regarding production of a note under Texas law.

The first theory posits that to foreclose, a party must produce the original note bearing a "wet ink signature."[3]  Numerous federal district courts have addressed this question, and each has concluded that Texas recognizes assign-ment of mortgages through MERS and its equivalents as valid and enforceable without production of the original, signed note. The court summarized Martins's strategy accurately in *Wells v. BAC Home Loans Servicing, L.P.*, No. W-10-CA-350, 2011 WL 2163987, at *2 (W.D. Tex. Apr. 26, 2011) (internal citations and quotation marks omitted):

> This claim—colloquially called the "show-me-the-note" theory—
> began circulating in courts across the country in 2009.  Advocates
> of this theory believe that only the holder of the original wet-ink sig-

---

[2] The issue is made all the more difficult by the fact that few Texas courts have properly articulated Texas law in this area—most foreclosure cases are decided by the federal courts under diversity jurisdiction.  Moreover, Texas courts routinely rely on *federal* interpretations of Texas law.  *See Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-644-CV, 2012 WL 3793190, at *1 n.3 (Tex. App.—Austin Aug. 30, 2012, no pet.) ("Federal authority is persuasive here because a great amount of home-mortgage litigation in Texas is tried in its federal courts, applying Texas foreclosure law."); *Robeson v. MERS*, No. 02-10-227-CV, 2012 WL 42965, at *4 n.4 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (explaining that federal authority, though not controlling, is "particularly persuasive" in this area).

[3] *See, e.g.*, *Carrie v. Chase Home Fin.*, No. 3:12-CV-852, 2013 WL 704943 (N.D. Tex. Feb. 1, 2013) (recommendation of magistrate judge), *adopted sub nom. Carrie v. JPMorgan Chase Bank, N.A.*, 2013 WL 705865, at *3 (N.D. Tex. Feb. 27, 2013) (describing plaintiffs' demand for "The ORIGINAL UNALTERED WET INK SIGNATURE PROMISSORY NOTE"); *Islamic Ass'n of DeSoto, Tex., Inc. v. MERS*, No. 3:12-CV-613, 2012 WL 2196040, at *1 (N.D. Tex. June 15, 2012).

nature note has the lawful power to initiate a non-judicial foreclosure. The courts, however, have roundly rejected this theory and dismissed the claims, because foreclosure statutes simply do not require possession or production of the original note. The "show me the note" theory fares no better under Texas law.[4]

In Texas, existence of a note may be established by "[a] photocopy of the promissory note, attached to an affidavit in which the affiant swears that the photocopy is a true and correct copy of the original note." *Blankenship v. Robins*, 899 S.W.2d 236, 238 (Tex. App.—Houston [14th Dist.] 1994, no writ). We find no contrary Texas authority requiring production of the "original" note. The original, signed note need not be produced in order to foreclose.

The second theory—distinct but related—is that a transfer of a deed of trust by way of MERS "splits" the note from the deed of trust, thus rendering both null. In order to foreclose, the theory goes, a party must hold both the note and the deed of trust. The federal district courts have reached conflicting results on precisely what is required.[5] The minority of district courts have held that the note and deed of trust must both be held by the foreclosing entity.[6] Others have held that, under Texas law, foreclosure does not require possession of the note.[7]

---

[4] *See also Clark v. Bank of Am. NA*, No. 3:12-CV-1277, 2012 WL 4793465 (N.D. Tex. Aug. 1, 2012) (recommendation of magistrate judge), *adopted*, 2012 WL 4793439 (N.D. Tex. Oct. 9, 2012).

[5] *See Routh v. Bank of Am., N.A.*, No. SA-12-CV-244, 2013 WL 427393, at *6 (W.D. Tex. Feb. 4, 2013) (discussing the varying positions). Moreover, courts have often conflated or at least intertwined the "show-me-the-note" and "split-the-note" theories such that the analysis is not always completely clear.

[6] *See, e.g.*, *McCarthy v. Bank of Am., NA*, No. 4:11-CV-356, 2011 WL 6754064, at *3 (N.D. Tex. Dec. 22, 2011) ("If the holder of the deed of trust does not own or hold the note, the deed of trust serves no purpose, is impotent, and cannot be a vehicle for depriving the grantor of the deed of trust of ownership of the property described in the deed of trust.").

[7] *See, e.g.*, *Wells*, 2011 WL 2163987, at *3 ("[W]hile suits on a promissory note typically require possession, foreclosures do not. Under Texas law, a mortgage servicer can foreclose under a deed of trust, regardless of whether it is a holder.") (internal citation omitted); *Kramer*

(continued...)

No. 12-20559

The first position, declaring the "split-the-note" theory valid, is supported primarily by *Carpenter v. Longan*, 83 U.S. 271, 274 (1872), holding that "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *See McCarthy*, 2011 WL 6754064, at *3. That language, however, is inapposite, because the Court was addressing Colorado Territorial law and federal common law. Neither controls our interpretation of Texas law.

There are few sources in Texas law that support the "split-the-note" theory. Two courts have held that a party must hold the note in order to execute on a lien. In *Shepard v. Boone*, 99 S.W.3d 263, 266 (Tex. App.—Eastland 2003, no pet.), the court held that summary judgment was properly granted against the creditor where the foreclosing party had adduced no evidence that it was the owner and holder of the underlying note. The court in *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.), reached the same conclusion and held that to foreclose through a deed of trust or sue on a note, a party must prove that it owns and holds the note.[8]

The weight of Texas authority, however, suggests just the opposite. The Texas Property Code provides that a "mortgage servicer" may administer a foreclosure on behalf of a mortgagee if "the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage," proper notice is given, and notice discloses that the

---

[7] (...continued)
*v. Fed. Nat'l Mortgage Ass'n*, No. A-12-CA-276, 2012 WL 3027990, at*6–*7 (W.D. Tex. May 15, 2012) (explicitly rejecting the reasoning and conclusion in *McCarthy*); *Stevens v. Wells Fargo Bank, N.A.*, No. 4:12-CV-594, 2012 WL 5951087 (N.D. Tex. Nov. 27, 2012).

[8] *Accord* 30 TEX. JUR. 3d DEEDS OF TRUST AND MORTGAGES § 119, at 524 (stating that because "a mortgage can have no legal effect apart from the debt or obligation of which it is designed to secure payment, any attempt to assign or transfer it apart from the debt is a nullity") (citing *Nutt v. Anderson*, 87 S.W.2d 760 (Tex. Civ. App.—Fort Worth 1935, writ dism'd)).

## No. 12-20559

mortgage servicer represents the mortgagee. TEX. PROP. CODE § 51.0025. A mortgagee includes both "the grantee, beneficiary, owner, or holder of a security instrument" and "a book entry system." *Id*. § 51.0001(4). The Code defines a "book entry system" as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." *Id*. § 51.0001(1). The "mortgage servicer" is the "last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id*. § 51.0001(3). A mortgagee may be its own mortgage servicer. *Id.*

Because MERS is a book-entry system, it qualifies as a mortgagee. Thus, the Texas Property Code contemplates and permits MERS either (1) to grant the mortgage servicer the authority to foreclose or, if MERS is its own mortgage servicer, (2) to bring the foreclosure action itself. In either event, the mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure.[9]

The Texas courts have repeatedly discussed the dual nature of a note and deed of trust. "It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable, and a plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without a waiver of the lien." *Carter v. Gray* 81 S.W.2d 647, 648 (Comm'n App. 1935, writ dism'd). Where a debt is "secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations." *Aguero v. Ramirez*, 70 S.W.3d 372,

---

[9] *See Van Hauen v. Wells Fargo Bank, N.A.*, No. 4:12-CV-344, 2012 WL 4162138, at *5 (E.D. Tex. Aug. 24, 2012) (recommendation of magistrate judge), *adopted*, 2012 WL 4322518 (E.D. Tex. Sept. 20, 2012) ("Courts in Texas have repeatedly recognized that Texas law allows either a mortgagee or a mortgage servicer to administer a deed of trust foreclosure without production of the original note.").

No. 12-20559

374 (Tex. App.—Corpus Christi 2002, pet. denied). The Texas courts have "rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations." *Bierwirth*, 2012 WL 3793190, at *3.[10] A deed of trust "gives the lender as well as the beneficiary the right to invoke the power of sale," even though it would not be possible for both to hold the note. *Robeson*, 2012 WL 42965, at *6.

The "split-the-note" theory is therefore inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned. The party to foreclose need not possess the note itself. Here, the mortgage was assigned to MERS, and then by MERS to BAC—the assignment explicitly included the power to foreclose by the deed of trust. MERS and BAC did not need to possess the note to foreclose.

Martins's theories regarding improper foreclosure relating to possession of the note are consequently unavailing. Given the transfer in this case, neither the "show-me-the-note" theory nor the "split-the-note" notion applies under Texas law.

## C.

Martins claims he did not receive notice of the sale as required by Section 51.002 of the Texas Property Code. Service of notice is complete when the notice is sent via certified mail. TEX. PROP. CODE § 51.002(e). "The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." *Id*. BAC satisfied its burden of proof by presenting evidence of mailing the notice and an affidavit to that effect. There is no requirement that Martins receive the notice.

---

[10] *See also Stephens v. LPP Mortg.*, 316 S.W.3d 742, 747 (Tex. App.—Austin 2010, pet. denied).

8

No. 12-20559

D.

Martins maintains that there was a sufficient dispute of material fact to send his claim of wrongful foreclosure to the jury. The three elements of wrongful foreclosure discussed by Martins are (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the two.[11] Martins urges that the failure to receive notice was a defect. That contention fails for the reasons set forth above: BAC provided the proper notice to Martins directly through the mails and to the county clerk. There was no defect.

Additionally, the selling price was not grossly inadequate: The house was sold for $133,897.86. The last appraisal had been $145,716. Fannie Mae paid almost 92% of the most recent appraisal value. A "grossly inadequate price would have to be so little as 'to shock a correct mind.'"[12] The sale price is not shocking and is therefore not "grossly inadequate." Because there was no defect, and the sale price was not grossly inadequate, there was no wrongful foreclosure.

E.

Martins avers that promissory estoppel bars BAC from foreclosing. He claims that BAC orally promised that his house would not be foreclosed on if he submitted an application through the Home Affordable Modification Program (known as "HAMP"), which he did. Under the doctrine of promissory estoppel, if justice requires, a person may be bound by a promise that he reasonably believed would induce action or inaction and that did induce the action or forbearance. *Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937

---

[11] *See Charter Nat'l Bank–Hous. v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

[12] *Fed. Deposit Ins. Corp. v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990) (quoting *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. Civ. App.—Dallas 1932, no writ)).

No. 12-20559

(Tex. 1972).

Martins's argument fails on several grounds, chief among them the statute of frauds. A loan agreement for more than $50,000 is not enforceable unless it is in writing. TEX. BUS. & COM. CODE § 26.02(b). Similarly, a promise relating to the sale of real estate must be in writing. *Id*. § 26.01(b)(4). An agreement regarding the transfer of the property or modification of a loan must therefore be in writing to be valid.

Promissory estoppel may overcome the statute-of-frauds requirement in Texas, but "there must have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds."[13] The purported agreement to modify the loan agreement is within the statute of frauds. Martins alleges only an oral agreement, not a promise on the part of BAC or its agents to sign an agreement validating the oral agreement that would satisfy the statute of frauds. Thus, promissory estoppel does not overcome the statute of frauds, and Martins's argument fails.

## F.

Martins contends that the district court abused its discretion by denying his motion for a continuance, which was filed after the deadline to respond to BAC's motion for summary judgment. Under Federal Rule of Civil Procedure 56(d), the court may defer judgment if the nonmovant shows that, for "specific reasons," it cannot present facts to justify its position and needs further discov-

---

[13] *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.—Houston 1992, writ denied). *See also Carpenter v. Phelps*, 391 S.W.3d 143 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("For promissory estoppel to create an exception to the statute of frauds requires a promise to sign a prepared written contract which would satisfy the requirements of the statute of frauds."); *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.—Corpus Christi 2001, no pet.) ("When promissory estoppel is raised to bar the application of the statute of frauds, there is an additional requirement that the promisor promised to sign a written document complying with the statute of frauds.").

ery.  Martins did not ask for more time until after the deadline had passed and did not articulate specifically what facts he needed to respond to the motion. Nevertheless, the court considered his response, giving him more consideration than was required.  The court did not abuse its discretion by denying the untimely motion for continuance.

The summary judgment is AFFIRMED.