# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 3, 2013

No. 13-40067
Summary Calendar

Lyle W. Cayce
Clerk

CAROLYN CASTERLINE,

Plaintiff-Appellant

v.

ONEWEST BANK, F.S.B.,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:12-CV-150

The opinion in this case issued on June 25, 2013, is withdrawn, and the following is substituted thereto:

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Carolyn Casterline filed suit in state court seeking a declaratory judgment that OneWest Bank, F.S.B. was not entitled to foreclose on her property. After the action was removed to federal court, the district court granted OneWest's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40067

motion for summary judgment. Casterline appealed. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2007, Carolyn Casterline ("Casterline") purchased a home financed by IndyMac Bank, F.S.B. ("IndyMac"). As part of that transaction, Casterline executed a home equity promissory note ("Note") payable to IndyMac, and a deed of trust ("Security Instrument") identifying Charles A. Brown as trustee, IndyMac as lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary of the Security Instrument and as nominee for IndyMac, its successors and assigns.

The Federal Deposit Insurance Corporation ("FDIC") became the receiver of IndyMac's assets, including the Note, beginning on July 11, 2008. FDIC then transferred substantially all of IndyMac's assets to OneWest Bank, F.S.B. ("OneWest"). The parties dispute whether FDIC also transferred the Note.

Subsequently, Casterline defaulted on her loan. On January 4, 2011, MERS assigned the Security Instrument to OneWest effective May 5, 2010. OneWest then filed an application for expedited foreclosure proceedings. Casterline responded by commencing this action in state court, contesting OneWest's right to foreclose. OneWest removed to federal court on the basis of diversity jurisdiction, and moved for summary judgment. The district court granted OneWest's motion. Casterline timely appealed.

## II. STANDARD OF REVIEW

"Summary judgments are reviewed *de novo*." *Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 787 (5th Cir. 2012). The district court's judgment should be affirmed "if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute [as] to any material fact and the movant is entitled to judgment as a matter of law." *U.S. ex rel. Jamison*

*v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011); *see also* Fed. R. Civ. P. 56(a).

## III. DISCUSSION

On appeal, Casterline raises three arguments. First, she argues that OneWest failed to establish ownership of the Note. Second, she contends that the district court erred by finding enforceable a security instrument severed from the underlying note. Third, she asserts that the district court ignored Texas law by holding that OneWest was entitled to foreclose on the Security Instrument even if it was not the owner of the Note. While Casterline presents these as three separate arguments, we construe them as variants of her central contention that OneWest had to show ownership of both the original Note and the Security Instrument because mere possession of the Security Instrument was insufficient to foreclose on the property.

We recently addressed—and rejected—a similar argument in *Martins v. BAC Home Loans Servicing, L.P.*, No. 12-20559, slip op. at 3, 2013 WL 3213633 (5th Cir. June 26, 2013) ("[Appellant] contends that [Appellee] cannot foreclose because it was assigned only the mortgage, and not the note itself, by MERS."). We described such arguments as falling under two theories that have repeatedly surfaced in the wrongful-foreclosure context. The first, the so-called "show-me-the-note" theory, claims that "only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Id.* at 4–5 (citation omitted). The second, what we have described as the "split-the-note" theory, asserts that "[i]n order to foreclose . . . a party must hold both the note and the deed of trust," because "a transfer of a deed of trust by way of MERS 'splits' the note from the deed of trust, thus rendering both null." *Id.* at 5; *see Wigginton v. Bank of N.Y. Mellon*, 488 F. App'x 868, 870 (5th Cir. 2012) (per curiam) (unpublished) (addressing "unenforceable split note" theory).

No. 13-40067

As we explained in *Martins*, neither theory has merit under Texas law. No. 12-20559, slip op. at 5, 8; *see, e.g.*, *Wigginton*, 488 F. App'x at 870; *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 469–70 (W.D. Tex. 2011).  First, "[i]n Texas, existence of a note may be established by '[a] photocopy of the promissory note, attached to an affidavit in which the affiant swears that the photocopy is a true and correct copy of the original note," and "no contrary Texas authority requir[es] production of the 'original' note. . . . in order to foreclose." *Martins*, No. 12-20559, slip op. at 5 (second alteration in original) (citation omitted). Second, "Texas courts have 'rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations." *Id.* at 8 (quoting *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.)).

As in *Martins*, the mortgage in this case was assigned by MERS, and the assignment included the power to foreclose.  Casterline has not challenged the assignment of the Security Instrument to OneWest and OneWest "did not need to possess the note to foreclose." No. 12-20559, slip op. at 8.  In rejecting her "show-me-the-note" theory, we also reject her argument that splitting the Security Instrument from the underlying Note, and separately assigning them, rendered the mortgage unenforceable. *See id.*; *Wigginton*, 488 F. App'x at 871; *Helms v. Mortg. Elec. Registration Sys., Inc.*, No. H-11-3298, 2012 WL 43368, at *2 (S.D. Tex. Jan. 9, 2012) ("[E]ven if the note and the deed of trust became somehow separated, that does not affect the rights of the lien-creditor to foreclose based on the deed of trust.").

Although this reasoning disposes of the majority of Casterline's arguments, she raises one additional point that touches upon OneWest's ownership of the Note.  In a footnote, Casterline asserts that "if OneWest cannot show that it owns the Note, it has not shown its authority to foreclose under the

No. 13-40067

Security Instrument." Setting aside whether Casterline has sufficiently briefed this argument, Texas law provides that a mortgagee may authorize a mortgage servicer to administer the foreclosure process. Tex. Prop. Code Ann. § 51.0025. A mortgage servicer is defined as "the last person to whom the mortgagor has been instructed by the current mortgagee to send payment for the debt secured by a security instrument." Tex. Prop. Code Ann. § 51.0001(3). The Texas Property Code contemplates that "[a] mortgagee may be the mortgage servicer." *Id.*

Here, MERS, as the "beneficiary . . . of a security instrument" and "book entry system," was a mortgagee. Tex. Prop. Code Ann. § 51.0001(4)(A), (B). Further, the Security Instrument provided MERS "the right to foreclose and sell the Property." As the report and recommendation adopted by the district court correctly concluded, MERS had the authority to transfer the Security Instrument together with the power to foreclose to another party, including OneWest. *See Richardson v. CitiMortgage, Inc.*, No. 6:10-cv-119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) ("Under Texas law, where a deed of trust, as here, expressly provide[d] for MERS to have the power of sale . . . . MERS had the authority to transfer the rights and interests in the Deed of Trust . . . .").

Nevertheless, OneWest appears to concede that its "authority to foreclose is based on its ownership of the Note," and that "if a fact issue existed regarding OneWest's ownership of the Note, the same fact issue would exist regarding its authority to foreclose under the Security Instrument." In light of OneWest's statements, we briefly address the evidence supporting OneWest's ownership of the Note.

In support of its motion for summary judgment, OneWest submitted the affidavit of Rebecca Marks, OneWest's Manager of Default Litigation, together with a copy of the Note, and two attached allonges. The affidavit stated that

FDIC became the receiver of IndyMac on July 11, 2008, and then transferred the Note to the order of OneWest on March 19, 2009. One of the allonges demonstrates that the Note was transferred from FDIC to OneWest. The other allonge contains a blank endorsement by OneWest. Each specifically references the loan number, the original loan amount, the date of the note, and the borrower's last name and address.

Casterline contends that an unexplained gap in the chain of title precludes summary judgment. She points out that although Marks's affidavit states that OneWest became the Note's holder on March 19, 2009, the allonges themselves are undated, and MERS's January 2011 assignment of the Security Instrument listed Indymac as the current owner and holder of the Note. Further, according to Casterline, the order in which the allonges were attached is unclear, and the note OneWest submitted in its expedited foreclosure proceeding differed from that included with OneWest's motion for summary judgment.

We agree with the district court that Casterline's challenges are speculative, that Casterline has not submitted any controverting evidence, and that she has offered no alternative explanation for how the Note was transferred. Given the facts of this case, the mere fact that the allonges are undated does not create a gap in the chain of title. Her reading of the MERS assignment also omits that the owner of the Note included IndyMac's "successors and assigns," which, at the time the Security Interest was transferred, meant OneWest. As for any purported inconsistencies between the notes submitted in the foreclosure proceeding and in federal court, we again observe that Texas law did not require OneWest to present the original Note to foreclose on Casterline's property. *See Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011) (per curiam) (unpublished) ("The Texas Property Code provides that either a mortgagee or mortgage servicer may administer a deed of trust foreclosure without production of the original note.");

No. 13-40067

*see also* Tex. Prop. Code Ann. § 51.002(b), (d) (mortgage servicer must provide notice of default, opportunity to cure, and notice of foreclosure sale).  Moreover, Casterline had the opportunity to conduct further discovery on any perceived inconsistencies, but failed to do so. The district court thus correctly found that OneWest was authorized to foreclose on Casterline's property.

## IV.  CONCLUSION

For the aforementioned reasons, the district court's grant of OneWest's motion for summary judgment is AFFIRMED.