# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40061

United States Court of Appeals
Fifth Circuit

**FILED**

April 17, 2014

Lyle W. Cayce
Clerk

ROGER SINGHA; AMARJIT SINGHA,

Plaintiffs – Appellants

v.

BAC HOME LOANS SERVICING, L.P.; FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

Defendants – Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:10-CV-692

Before STEWART, Chief Judge, and GARZA and SOUTHWICK, Circuit
Judges.

PER CURIAM:*

Roger and Amarjit Singha brought this action against BAC Home Loans
Servicing, L.P. under the Texas Property Code, Texas Debt Collection Act, and
theories of contract and property law. The district court dismissed or granted
summary judgment on each of the Singhas' claims. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-40061

FACTUAL AND PROCEDURAL BACKGROUND

Robert and Amarjit Singha purchased a home in the Dallas, Texas suburb of Murphy on June 1, 2007. Amarjit Singha signed a promissory note. Both of the Singhas signed a deed of trust. The deed of trust lists Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender as the lender and the Mortgage Electronic Registration System ("MERS"), including its successors and assigns, as beneficiary and lender's nominee. MERS would later assign the note and deed of trust to BAC pursuant to its status as the beneficiary of the deed of trust.

In May 2009 the Singhas defaulted on the loan. Beginning September 1, 2009, the Singhas and BAC entered into a "Forbearance Agreement," whereby the Singhas would make reduced loan payments for six months, after which BAC could (1) require the Singhas to resume making their original payments, (2) require the Singhas to reinstate the loan in full, (3) offer a modification to the Singhas, (4) offer the Singhas some other foreclosure alternative, or (5) proceed with foreclosure. The Singhas allege, though, that BAC promised them that their loan would be modified if they made the six payments.

The Singhas made all six reduced payments from September 1, 2009 through February 1, 2010. They also made a seventh payment at the forbearance amount which BAC accepted. On April 1, 2010, BAC rejected the Singhas' next attempted forbearance payment and asserted it would only accept full reinstatement of the loan, which would require payment of a large sum to bring current the loan and all fees and costs. The Singhas requested modification in April 2010 after the eighth forbearance payment was rejected, and BAC sent the modification application in June. It was during this time that the Singhas allege the promise to modify their loan was made. In any event, the Singhas did not complete all the required paperwork. They also only

2

No. 13-40061

submitted their partially-completed application on September 24, 2010, a mere two weeks before the October 5, 2010 scheduled foreclosure sale. BAC denied the Singhas modification. The property was sold to the Federal National Mortgage Association ("Fannie Mae") at the October 5 foreclosure sale.

The Singhas filed suit in Texas state court. BAC removed the case to the United States District Court for the Eastern District of Texas. After removal, the Singhas filed the operative Second Amended Complaint, then BAC filed a motion to dismiss. The magistrate judge recommended the motion be granted in part to dismiss the breach of contract claim, claims under the Texas Debt Collection Act ("TDCA"), trespass to try title, common law unreasonable collection efforts, negligent misrepresentation, and gross negligence. The district court dismissed those claims in July 2011. The district court denied the motion to dismiss the following: a request for an accounting and for a declaratory judgment, and claims for anticipatory breach of contract, waiver of the breach of contract, and quiet title. Following another report and recommendation by the magistrate judge and another set of objections, the district court granted summary judgment on the remaining claims in September 2012. This appeal followed.

DISCUSSION

The Singhas raise the following challenges on appeal: (1) BAC was not a proper mortgagee and therefore could not foreclose pursuant to the note and deed of trust, (2) the forbearance agreement represents waiver by BAC of any right it had to foreclose, (3) claims under the TDCA should not have been dismissed, and (4) genuine issues of material fact should have prevented the grant of summary judgment on their quiet title and trespass to try title claims.

The district court granted a motion to dismiss as to some claims, and entered summary judgment on others. A grant of a motion to dismiss under

3

Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed *de novo*. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility arises when the complaint raises a reasonable expectation that the defendant is liable for the misconduct alleged. *Id.* at 556. A summary judgment is reviewed *de novo*, "applying the same legal standards as do the district courts." *Vuncannon v. United States*, 711 F.3d 536, 538 (5th Cir. 2013). Summary judgment is proper when viewing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## I.    BAC's Authority to Foreclose under the Mortgage

The district court dismissed the Singhas' claim that BAC breached the promissory note and deed of trust by declaring default, demanding the loan be brought current, and foreclosing. This argument is framed in terms of BAC's lacking standing under the deed of trust to foreclose. The success of this claim depends on our determining that BAC was not a proper mortgagee under the Texas Property Code and the common law of property, meaning it did not have the right to foreclose pursuant to the loan documents. The Singhas argue that any holder of a deed of trust must also possess the note secured by the deed of trust before it can exercise the rights of a mortgagee.

We have already held that "Texas recognizes assignment of mortgages through MERS and its equivalents as valid and enforceable." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013). "A mortgagee includes both 'the grantee, beneficiary, owner, or holder of a security instrument' and 'a book entry system.'" *Id.* at 255 (citing TEX. PROP. CODE § 51.0001(4)). MERS is a "book entry system" as defined in the Texas Property

No. 13-40061

Code; consequently it may assign a deed of trust just as any other holder or beneficiary. *Martins*, 722 F.3d at 255.

The Singhas are incorrect that the note must be possessed by the holder of the deed of trust. Notes and deeds of trust "constitute separate obligations" under Texas law. *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App. — Corpus Christi 2002, pet. denied). A properly empowered mortgage servicer does not need to possess the note in order to foreclose. *Martins*, 722 F.3d at 255. Here, MERS was an original beneficiary of the deed of trust. MERS, then, had the right to and did assign its interest in that instrument to BAC. Because a "mortgagee" can be a "beneficiary, owner, or holder of a security instrument," BAC as holder of the deed of trust is a proper mortgagee and may exercise any rights available to the beneficiary or holder, including that of foreclosure. *Id.*; TEX. PROP. CODE § 51.0001(4).

The Singhas' argument may also be read as a challenge to the validity of the assignment of the deed of trust from MERS to BAC. The Singhas have no standing to challenge the assignment because it does not clearly appear they were intended to be third-party beneficiaries of it. *See Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 228 (5th Cir. 2013). The Singhas make no such claim. The argument that the assignment was ineffective fails. The Singhas have failed to allege a breach of any provision of the promissory note or deed of trust and the district court's dismissal of this claim was not error.

II.    *Waiver of the Right to Declare Default or Foreclose*

The district court granted summary judgment on the claim that even if BAC did have the right to foreclose, it had waived that right. The district court listed ten items of evidence that the Singhas claimed supported a finding of waiver. Included were representations the Singhas stated had been made by

5

No. 13-40061

BAC that they qualified for a loan modification and that the documentation would be sent for them to sign.  The district court held that the evidence of BAC's conduct during the loan modification process did not show that BAC "unequivocally manifested" an intent to waive its rights to foreclose.

Under Texas law, a showing of waiver requires: "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).  "Waiver is largely a matter of intent; thus, for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d. 108, 111 (Tex. 1999).

There is no dispute that the loan documents stated that the mortgagee has the right to declare default, demand full reinstatement in the event of default, or foreclose.  BAC was fully aware of that right.  There is no evidence, though, that BAC made an explicit waiver of its rights under the loan documents.  Thus, the only question is whether the Singhas are correct that two actions by BAC waived its right to declare default and foreclose.

First, the Singhas assert that the forbearance agreement itself, along with the acceptance of a seventh forbearance payment, represented assent by BAC to nonperformance of the original loan agreement and therefore a waiver of strict compliance.  Second, the Singhas argue that BAC's considering their request for modification represented a waiver of the right to foreclose.  In their view, when BAC ultimately denied their application for modification, the Singhas should have been given a reasonable opportunity to comply with the original provisions of the loan documents. The Singhas additionally allege that various BAC employees orally represented to them that their loan would be or

6

was in the process of being modified and did not allow them to make payments while they awaited the bank's decision on their modification.

BAC responds that the forbearance agreement's plain language specifically states that "nothing in [the forbearance agreement] shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents." BAC contends the forbearance was a gratuity to allow the Singhas a chance to "get their financial affairs in order" before a foreclosure. BAC further argues that the forbearance agreement specifically disclaims that it is a modification and also disclaims any guarantee that complying with that agreement will result in a later modification. BAC also argues that, whatever oral representations were made, the clear language of the forbearance agreement explicitly states that it is not a modification and that modification is not guaranteed.

There is no evidence in the record showing when or by whom the alleged oral representations were made. Further, Roger Singha stated that the forbearance agreement would make them eligible to be "considered" for modification. On appeal, the Singhas assert that the foreclosure occurred while they were under review for modification, not after modification had already been granted. Ultimately, the Singhas' burden is to show that BAC's conduct clearly demonstrated a waiver of its right to foreclose. *See El Paso Indep. Auto. Dealers Ass'n,* 1 S.W.3d. at 111. The district court determined that none of this evidence was sufficient to show an unequivocal manifestation of intent on the part of BAC to relinquish the rights and remedies in the loan documents, especially in light of the fact that the parties never agreed to a modification.

Despite the Singhas' evidence of oral representations made by BAC about the likelihood or possibility of modification, we agree with the district court that they failed to show a genuine issue of material fact as to whether

No. 13-40061

BAC unequivocally manifested an intent to waive its rights to declare default, demand reinstatement, and foreclose. *Id.* Thus, the district court did not err in granting BAC summary judgment on the Singhas' waiver claim.

### III. *Texas Debt Collection Act Claims*

The district court dismissed the Singhas' claims under the Texas Debt Collection Act ("TDCA"). The TDCA prohibits "threatening to take an action prohibited by law" pursuant to the collection of a debt. TEX. FIN. CODE § 392.301(a)(8). It also prohibits "using any other false representation or deceptive means to collect a debt." TEX. FIN. CODE § 392.304(a)(19). The TDCA does not prohibit debt collectors from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." TEX. FIN. CODE § 392.301(b)(3).

The Singhas on appeal make arguments only about Sections 392.301(a)(8) and 392.304(a)(19).[1] They allege that since BAC was not a valid mortgagee and thus did not have a right to foreclose, BAC's representations regarding the impending foreclosure violated these two subsections. Alternatively, they urge that waiver destroys BAC's right to foreclose. According to the Singhas, a party with no right to foreclose "threaten[s] to take an action prohibited by law" by notifying the debtor of that foreclosure. TEX. FIN. CODE § 392.301(a)(8). Such a foreclosing party would also be "falsely represent[ing]" that it had such a right if it notified a debtor of that foreclosure. TEX. FIN. CODE § 392.304(a)(19). The Singhas argue that the protracted

---

[1] The Singhas suggest in their briefing that the magistrate judge did "not even address" three subsections of the TDCA: 392.303(a)(2), 3.92.301(a)(8), and 392.304(a)(19). Nonetheless, the Singhas failed to object to this oversight in the district court and their briefing discusses only Sections 392.301(a)(8) and 392.304(a)(19). Because the Singhas' briefing does not cite or address the other, apparently overlooked, provision, we limit our discussion of the alleged facts to their application to the provisions actually briefed.

modification negotiations "result[ed] in deceptive conduct." The alleged deceptive conduct is the same as complained of with regard to waiver; that is, the Singhas allege a representative of BAC made some representation to them that it would modify the Singhas' loan if they made all payments required under the forbearance agreement and later that the loan had been modified.

As discussed above, the Singhas' claim that BAC was not a proper mortgagee fails as a matter of law. *Martins*, 722 F.3d at 255. We also decided above that BAC did not clearly manifest any intent to waive its right of foreclosure. *See El Paso Indep. Auto. Dealers Ass'n,* 1 S.W.3d. at 111. Since BAC is a proper mortgagee, threatening foreclosure is expressly permitted by the TDCA. TEX. FIN. CODE § 392.301(b)(3). A proper mortgagee, further, is not making a misrepresentation if it initiates foreclosure proceedings. *See id.*

Also discussed above were the Singhas' statements that various BAC agents represented to them that making the forbearance payments would result in modification of the loan. BAC cites numerous district court cases from around the country for the proposition that loan-modification discussions are not debt collection activities. In addition, we stated in an unpublished opinion that "[d]iscussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of [a] debt." *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 (5th Cir. 2012) (alterations in original). While this particular passage referred to Section 392.304(a)(8), that provision of the TDCA appears to be analogous to Section 392.304(a)(19).

We do not announce a rule that modification discussions may never be debt collection activities. We do conclude, though, that the Singhas' particular factual allegations here – allegations of what occurred during the course of what they describe as more than fifty phone calls and other contacts during a protracted loan modification process – are not communications in connection with *collection* of a debt. *See* TEX. FIN. CODE § 392.304(a)(19). These were

communications in connection with negotiating the modification of a debt. Therefore, even if there had been a promise to modify a loan when no such modification decision had been approved, that at most would be a misrepresentation. What the Singhas have failed to allege is any basis on which to decide that their modification discussions were debt collection activities for TDCA purposes.[2] *See* FED. R. CIV. P. 12(b)(6).

## IV.    *Quiet Title and Trespass to Try Title; Breach of Contract*

A suit to quiet title is an equitable action in which a plaintiff must prove and recover on the strength of his own title, not the weakness of his adversary's. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. — Corpus Christi 2001, no pet.). Trespass to try title is a statutory action with specific pleading requirements. TEX. PROP. CODE ANN. § 22.001; TEX. R. CIV. P. 783. To succeed, the "Plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitation, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). Like in a suit to quiet title, the plaintiff must "prevail on the superiority of his title, not the weakness of a defendant's." *Id.*

The district court dismissed the Singhas' trespass to try title claim and granted summary judgment to BAC on their quiet title claim. Both claims rest only on the argument that BAC was not a proper mortgagee, which, as discussed above, fails as a matter of law. *See Martins*, 722 F.3d at 255. We

---

[2] The district court concluded that the TDCA did not apply because BAC was not a "debt collector" within the meaning of the act. The district court analogized the TDCA to the Fair Debt Collection Practices Act. This court, in a published opinion, has since held that the definition of "debt collector" under the TDCA is broader than that under the FDCPA. *See Miller v. BAC Homes Loans Servicing, L.P.*, 726 F.3d 717, 722-23 (5th Cir. 2013) (discussing comparatively broader definition of "debt collector" under TDCA as opposed to FDCPA).

No. 13-40061

have concluded that BAC was a proper mortgagee who may exercise the power of sale under the deed of trust and that it did not waive its right to do so. BAC foreclosed on the Singhas' home on October 5, 2010 and sold the property to Fannie Mae. Since the foreclosure was valid and extinguished the Singhas' interest in the property, their title to the property is not greater than Fannie Mae's and the district court did not err in granting summary judgment to Fannie Mae on the Singhas' suit to quiet title. *See Fricks*, 45 S.W.3d at 327. Similarly, the Singhas cannot prove a superior title to Fannie Mae for the purposes of establishing any of the elements of their claim for trespass to try title. *See Martin*, 133 S.W.3d at 265.

Various other arguments were made in the district court that have not been reargued on appeal. Filtering out some arguments in order to focus the court's attention on the seemingly most compelling ones on appeal is valid advocacy. One such argument was a claim of anticipatory breach of contract for BAC's breach of an alleged oral contract to modify the Singhas' loan formed by the complained-of representations that the loan was or would be modified. The magistrate judge granted summary judgment to BAC on this claim. We will not discuss any arguments not fully briefed, and certainly will not disturb the district court's rejection of such arguments. *See Yohey v. Collins*, 985 F.2d 222, 224 (5th Cir. 1993).

AFFIRMED.