# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 8, 2014

Lyle W. Cayce
Clerk

No. 13-10914

DONALD LANGLOIS; FILOMENA LANGLOIS,

Plaintiffs - Appellants

v.

WELLS FARGO BANK NATIONAL ASSOCIATION, as successor by merger to Wells Fargo Home Mortgage Inc. d/b/a America's Servicing Company,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-1263

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Donald Langlois and Filomena Langlois (collectively, "Plaintiffs") appeal the district court's dismissal of their breach of contract, common law fraud, promissory estoppel, unreasonable collection efforts, and Texas Debt Collections Act claims against Wells Fargo Bank National Association, as successor by merger to Wells Fargo Home Mortgage Inc. d/b/a America's

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10914

Servicing Company ("Defendant").   We AFFIRM in part and VACATE and REMAND in part.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs entered into a Home Equity Adjustable Rate Note (the "Note") and a Home Equity Security Instrument ("Security Instrument") in favor of Aames Funding Corporation Financial d/b/a Aames Home Loans on March 23, 2006.  The Note and Security Instrument were assigned to U.S. Bank National Association on March 29, 2006.  Pursuant to the assignment, Wells Fargo became the servicer of the Note on March 29, 2006.  It is undisputed that the Langlois subsequently defaulted on the Note.

### 1. *Forbearance Agreements*

After the Langlois became delinquent on their mortgage, Wells Fargo sent the Langlois a letter on June 27, 2008, offering to enter into a special forbearance agreement (the "First Forbearance agreement").   Filomena Langlois signed and returned the First Forbearance agreement on July 15, 2008.  By executing the First Forbearance agreement, the Langlois would have more time to make up their missed payments and bring their Note current.  In exchange, Wells Fargo promised not to foreclose on their home during the period of the forbearance.  The First Forbearance agreement required the Langlois to comply with a strict payment schedule, but the Langlois failed to make the first required payment on July 27, 2008.

The next month, Wells Fargo sent the Langlois a letter offering to enter into a second special forbearance agreement (the "Second Forbearance agreement"), giving the Langlois more time to make up the delinquent payments.  Filomena Langlois signed and returned the Second Forbearance agreement on September 25, 2008.  The Second Forbearance agreement required the Langlois to comply with the following payment schedule:

2

No. 13-10914

September 19, 2008, $2,620.00; October 18, 2008, $1,975.56; November 18, 2008, $1,975.56; and on December 18, 2008, $8,869.74.

Before signing the Second Forbearance agreement, the Langlois called Wells Fargo because they worried that they would not be able to make the substantially larger payment in December. The Langlois claim that the Wells Fargo call center representative told them over the phone that they would not have to make the December 18 payment, but that if they made the September through November payments, the December payment would be put "into the back of the loan." The Langlois paid the September through November payments, but did not make the $8,869.74 December payment.

The next month, Wells Fargo wrote to the Langlois on January 15, 2009 offering to enter into a third special forbearance agreement (the "Third Forbearance agreement"). Filomena Langlois signed and returned the Third Forbearance agreement on January 29, 2013. The Third Forbearance agreement required the Langlois to comply with the following payment schedule: January 29, 2009, $2,619.38; February 28, 2009, $2,286.61; March 28, 2009, $2,286.61; April 28, 2009, $2,286.61; and on May 28, 2009, $9,928.20.

Before signing the Third Forbearance agreement, the Langlois called Wells Fargo because they feared that they would not be able to make the substantially larger payment in May. The Langlois claim that the Wells Fargo call center representative told them over the phone that they would not have to make the May 28 payment of $9,928.20, but that if they made the January through April payments, the May payment would be put "back in the life of your loan." The Langlois made the payments for January through April, 2009, but they failed to make the May 28th payment of $9,928.20.

### 2. Loan Modification

On November 7, 2009, the Langlois signed a Loan Modification Agreement (LMA) with Wells Fargo. The amount due under the Note in the

3

No. 13-10914

LMA was $287,683.12. Under the LMA, the Langlois were responsible for a monthly payment amount of $1,925.63 in principle and interest, along with a $566.42 escrow payment, resulting in a total monthly payment of $2,492.05. The LMA stated that the monthly escrow deposits were subject to change in the future. A few months after signing the LMA, the Langlois received an "Escrow Disclosure Statement and Notice of New Mortgage Payment" dated May 17, 2010, informing them that their monthly escrow payments were increasing by $60.10 per month, for a new monthly total of $626.52. The increased escrow amount required the Langlois to pay a new monthly total of $2,552.15, but they continued to pay the original amount of $2,492.05.

The Langlois ultimately fell behind on their monthly payments altogether. The Langlois then filed suit against Wells Fargo in Texas state court in July 2010. The Langlois asserted the following claims against Wells Fargo: (1) breach of contract; (2) promissory estoppel, (3) violation of Texas Constitution Article XVL, § 50(a)(6)(L);[1] (4) violation of the Texas Debt Collection Practices Act; (5) common law unreasonable debt collection; and (6) common law fraud. Wells Fargo removed the case to the Northern District of Texas on June 6, 2011.

On January 20, 2012, Wells Fargo filed a motion for summary judgment in the district court. In its first order, dated August 8, 2012, the district court granted Wells Fargo's motion as to the Langlois' breach of contract claim regarding the original loan agreement, the promissory estoppel claim, the Texas Constitution claim, the unreasonable debt collection claim, and the fraud claim. The district court then granted Wells Fargo leave to file a second motion for summary judgment, which Wells Fargo filed on February 25, 2013.

---

[1] The Langlois have not appealed the district court's decision granting summary judgment to Wells Fargo on the Texas Constitution claim.

No. 13-10914

In the district court's second order, dated April 16, 2013, the court granted Wells Fargo's motion for summary judgment on all of the Langlois' remaining claims. The Langlois' filed a motion to reconsider on May 7, 2013, which the district court denied on July 26, 2013. The Langlois now appeal.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991). "[S]ummary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003) (internal quotation marks and citation omitted). This Court views the evidence in a light most favorable to the non-movant, but the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004) (citation omitted).

## DISCUSSION

### I.     Breach of contract claims.

"In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotation marks and citation omitted). On appeal, the Langlois raise breach of contract claims for the forbearance agreements and the loan modification agreement.

#### A. Forbearance Agreements

The Langlois assert that Wells Fargo breached the Second and Third Forbearance agreements by failing to fulfill its promise to provide them with a

loan modification at the end of each forbearance period.  The district court found that the Langlois could not sustain a claim against Wells Fargo for breach of the forbearance agreements when the Langlois breached the agreements themselves by failing to make all of the scheduled payments. Under Texas law, "[i]t is a well established [*sic*] rule that a party to a contract who is himself in default cannot maintain a suit for its breach."  *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (internal quotation marks and citations omitted).

The Langlois concede that they did not make the final payments under the Second and Third Forbearance agreements.  Nonetheless, they argue that their failure to make these two payments does not preclude their breach of contract claim because the Wells Fargo representatives told them over the phone that these payments were not required.  The Langlois' arguments are precluded by the statute of frauds.

Under Texas Law, the statute of frauds provides that, "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code Ann. § 26.02(b).  Since the Langlois owed $232,500 under their original Note, this loan agreement is subject to the statute of frauds.  The statute of frauds also requires that any agreement in "which a financial institution loans or delays repayment of" a loan must be in writing. Tex. Bus. & Com. Code Ann. § 26.02(a)(2).  Thus, the forbearance agreements are also subject to the statute of frauds because they delayed repayment of the original loan.  Accordingly, any alleged verbal modifications to the forbearance agreements are unenforceable under the statute of frauds.  *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 239 (5th Cir. 2014) (per curiam) (unpublished) ("The statute of frauds also applies to preclude enforcement of

oral modifications to loan agreements." (citing *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013))); *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 555–56 (Tex. App. 2009).

### *B. Loan Modification Agreement*

The Langlois assert that Wells Fargo breached the Loan Modification Agreement (LMA) by failing to recognize the agreement and failing to comply with the terms of the agreement. In support of their assertion, the Langlois point to various accounting errors Wells Fargo made after the parties signed the LMA. The district court found that Wells Fargo did recognize the LMA and that any late fees or charges imposed due to Wells Fargo's accounting errors were reversed.

On appeal, the Langlois have not disputed the district court's finding that Wells Fargo reversed any erroneous charges due to its accounting errors. Moreover, it is undisputed that the Langlois themselves ultimately breached the LMA by failing to make the required escrow payments, and then defaulting on their payments completely. As discussed above, the Langlois cannot maintain a breach of contract claim against Wells Fargo under Texas law since they breached the LMA themselves. *See Dobbins*, 785 S.W.2d at 378. [2]

## II.    Promissory estoppel claim.

Under Texas law, the elements of promissory estoppel are: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002) (citation omitted). The

---

[2] The Langlois also argue, for the first time on appeal, that Wells Fargo has waived its right to foreclose on their home by failing to pursue foreclosure during the more than two years the Langlois have been in default. Notwithstanding the fact that this Court does not address arguments raised for the first time on appeal, the written forbearance agreements clearly state that Wells Fargo was not waiving any of its rights under the original Note and Security instrument during the periods of forbearance.

Langlois allege that Wells Fargo representatives promised them that they would receive a loan modification upon completion of the forbearance agreements. The sole remedy the Langlois seek for their promissory estoppel claim is enforcement of Wells Fargo's promise to give them a loan modification. It is undisputed, however, that the Langlois signed a Loan Modification Agreement with Wells Fargo on November 7, 2009. Therefore, this claim is moot.

## III.    Unreasonable collection efforts claim.

In Texas, "[u]nreasonable collection is an intentional tort." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. 2008). To be liable for unreasonable debt collection, the debt collector must employ "efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id.* (quotation marks and citations omitted). The Langlois assert that Wells Fargo erroneously assessed late fees and made accounting errors when the Langlois first began making payments under the LMA. The district court found, and the Langlois do not dispute, that Wells Fargo reversed any improper fees or charges due to its own internal accounting errors. Accordingly, the Langlois have failed to show that Wells Fargo engaged in unreasonable debt collection efforts.

## IV.    Common law fraud claim.

Under Texas law, "[t]he elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

8

No. 13-10914

The Langlois argue that Wells Fargo "made several fraudulent misrepresentations," including Wells Fargo's representations that the Langlois did not have to pay the December 18th payment under the Second Forbearance agreement; that Wells Fargo improperly revoked an offer for a loan modification in June 2009; and that Wells Fargo told the Langlois they were still in default after the loan modification had been established. The district court found that the "Langlois provide[d] no evidence that any of the alleged misrepresentations by Wells Fargo were made intentionally, knowingly or recklessly." In addition, the Langlois have not brought forth any evidence showing how they were injured by Wells Fargo's allegedly fraudulent misrepresentations, and proof of injury is an essential element of fraud under Texas law. *See Aquaplex*, 297 S.W.3d at 775. Thus, the Langlois have not sustained a claim for fraud. *Id.* at 774.

The Langlois also asserted a claim for fraudulent inducement, claiming that they would not have signed the Second and Third Forbearance agreements absent Wells Fargo's verbal representations that the final "payments" under the forbearance agreements were not actually payments. The Langlois cannot sustain a claim for fraudulent inducement under Texas law because Wells Fargo's verbal representations directly contradict the terms of the signed forbearance agreements, which stated that, "Each payment must be remitted according to the schedule." *See Taft v. Sherman*, 301 S.W.3d 452, 458 (Tex. App. 2009) ("When oral promises are directly contradicted by express, unambiguous terms of a written agreement, the law says that reliance on those oral promises is not justified."). Thus, the district court did not err in granting summary judgment to Wells Fargo on the Langlois' fraudulent inducement claims.

## V.    Texas Debt Collections Act (TDCA).

Under the TDCA, a debt collector "may not use threats, coercion, or attempts to coerce that employ [certain enumerated] practices . . . [including] threatening to take an action prohibited by law."  Tex. Fin. Code Ann. § 392.301(a)(8).  In addition, "a debt collector may not use a fraudulent, deceptive, or misleading representation that employs [certain enumerated] practices . . . [including] misrepresenting the character, extent, or amount of a consumer debt."  Tex. Fin. Code Ann. § 392.304(a)(8).

The Langlois argue that Wells Fargo is a "debt collector" subject to the prohibitions against unfair debt collection practices under the TDCA.  They also assert that Wells Fargo violated the TDCA's prohibition on "threatening to take an action prohibited by law," Tex. Fin. Code Ann. § 392.301(a)(8), by threatening to foreclose on the Langlois' home when Wells Fargo did "not have legal authority to foreclose."  The Langlois also claim Wells Fargo violated the TDCA's prohibition on "misrepresenting the character, extent, or amount of a consumer debt," Tex. Fin. Code Ann. § 392.304(a)(8), by consistently misrepresenting the amount of the Langlois' debt.  The issue here turns on whether Wells Fargo may be properly considered a "debt collector" under the TDCA.

In the district court, Wells Fargo moved for summary judgment on the TDCA claim, asserting that it was not a "debt collector" as defined by the TDCA.  The district court held that "Wells Fargo is not a debt collector as defined under the TDCA because there is no evidence that the Langlois were in default when Wells Fargo became the mortgage servicer of the Note."  Accordingly, the district court granted Wells Fargo's motion for summary judgment on the TDCA claims.

After the district court ruled on the motion for summary judgment—but before the Langlois filed their notice of appeal—this Court adopted a different

definition of "debt collector" in mortgage foreclosure cases under the TDCA.  In *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717 (5th Cir. 2013), this Court held that a mortgage servicer or assignee "qualifies as a debt collector under the . . . TDCA, irrespective of whether the [borrower's] mortgage was already in default at the time of its assignment."  *Id.* at 723.

Since the district court reasoned that Wells Fargo was exempt from the TDCA because the Langlois were in default when Wells Fargo became the mortgage servicer of the Note, the district court's determination is inconsistent with Fifth Circuit precedent.  Given this intervening change in the case law, both Wells Fargo and the Langlois agree that the TDCA claims should be remanded to the district court in light of this Court's holding in *Miller*.

Since *Miller* adopted a definition of "debt collector" in mortgage foreclosure cases that is inconsistent with the district court's opinion, we vacate the district court's summary judgment on the TDCA claims, and remand the TDCA claims so that the district court can adjudicate the Langlois' TDCA claims on the merits in the first instance.

## CONCLUSION

For the reasons above, we VACATE and REMAND the plaintiffs' TDCA claims.  All other claims are AFFIRMED.